| | | |
|---|---|---|
| **MICHAEL DOUGLAS PATTON** | : | **CIVIL NO. 3:09-CV-1178** |
| | : | |
| **Petitioner,** | : | **(Judge Kosik)** |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **SUPERINTENDENT KENNETH** | : | |
| **CAMERON, et al.,** | : | |
| | : | |
| **Respondents.** | : | |

# REPORT AND RECOMMENDATION

## I.    Introduction

One of the statutory prerequisites to a state prisoner seeking habeas corpus relief in federal court is that the prisoner must "exhaust[] the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). The instant case presents a striking paradigm of an unexhausted petition, since Patton has sought federal habeas relief on a variety of claims before he even commenced litigation of these issues in the state courts. For the reasons set forth below, it is recommended that Patton's petition for writ of habeas corpus be dismissed as premature in light of the petitioner's manifest failure to meet this exhaustion requirement.

## II.    Statement of Facts and of the Case

### B.    Procedural History of the State Prosecution

This case arises out of what was found at trial to have been a series of sexual encounters in 2005 between the petitioner, who was then a 20 year old man,  and a 12-

year old girl. When the father of this child learned of this sexual contact, he notified the police and on June 12, 2005, Patton was charged in the Court of Common Pleas of York County with rape of a child and statutory sexual assault.(Doc. 6, App. A-G.)

Patton's state case was the subject of three trials. The first two trials ended in mistrials as a result of a deadlocked jury in one instance, and an inappropriate comment by a Commonwealth witness in the second instance. (Id.) The third, and final, state trial of this case took place in August, 2006, and concluded following a two day trial with a jury's verdict convicting Patton of child rape and statutory sexual assault. (Doc. 6, App. F and G.)

The jury reached this verdict after hearing the testimony of the victim, the 12 year old girl, regarding her sexual relationship with Patton. (Id., App. F, pp.67-118.) The jury also heard testimony from the victim's father and brother. (Id., App. F, pp.119-134, App. G, pp.6-13.) While these witnesses could not directly confirm sexual intercourse between the victim and Patton, they described observing Patton entwined with the victim, in a sexually suggestive fashion, in January of 2005.(Id.) In addition, the jury also heard from witnesses who testified to various admissions made by Patton. These witnesses included the victim's brother, who testified that Patton expressed affection for the victim (Id., App. F, p. 126); a police officer, who testified that Patton admitted to kissing the victim, conduct Patton acknowledged was

inappropriate (Id., App. G, p. 69.); and an acquaintance of Patton's, who testified that Patton confessed to have sex with this 12 year old girl.(Id., App. G, pp.58-59.)

Following this trial and conviction, in February of 2007, Patton was sentenced to a prison term of six and one-half to fifteen years imprisonment for his involvement in this sexual exploitation of a minor. (Doc. 6, App. B.) Following resolution of post-trial motions, Patton appealed this conviction to Pennsylvania's Superior Court on March 28, 2007. (Doc. 6, App. C.) In his direct appeal Patton raised four claims of error, arguing: (1) that the evidence was insufficient to convict him; (2) that the jury's verdict was so against the weight of the evidence as to shock the conscience; (3) that the trial court erred in sustaining Commonwealth objections to certain hearsay evidence; and (4) that the trial court abused its discretion by imposing a 6 ½ to 15 year sentence in this case. (Doc. 6, App. D.)

On January 15, 2008, the Pennsylvania Superior Court entered an opinion and order denying Patton's appeal, and affirming his conviction and sentence. ( Id. ) Patton sought further appellate review of this decision in the state courts by filing a petition for allowance of appeal with the Pennsylvania Supreme Court on February 13, 2008. ( Doc. 6, App. E.) That petition was denied by the Pennsylvania Supreme Court on September 22, 2008. (Id.)

Patton then filed a petition for writ of habeas corpus on June 22, 2009. (Doc. 1.) In this petition Patton raised six complaints regarding the state court proceedings, four of which had not previously been considered by any state court. Thus, at the outset, Patton brought a previously unlitigated claim that his prosecution following two prior mistrials violated the Double Jeopardy Clause of Fifth Amendment to the United States Constitution. (Doc. 1, Ground 1.) Patton then raised a second, previously unlitigated claim, that the state courts lacked subject matter jurisdiction because the charges against Patton were not brought by indictment following presentation of the evidence to a grand jury. (Doc. 1, Ground 2.) Patton then asserted, for the first time, that his conviction was the result of ineffective assistance of counsel in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution. (Doc. 1, Ground 4.) Patton coupled this new allegation with another previously unlitigated assertion that the Commonwealth knowingly relied upon perjured testimony to secure his conviction (Doc. 1, Ground 6.). Finally, Patton advanced two other claims which, liberally construed, had been part of his direct appeal from his conviction–an assertion that the evidence was insufficient to convict him, which he cast as a claim of actual innocence, (Doc. 1, Ground 3), and a contention that restrictions on cross-examination of a government witness, an issue which was the subject of Patton's initial state

appeal, unfairly curtailed his constitutional right to confront this witness. (Doc. 1, Ground 5.)

Three months after Patton filed this federal habeas corpus petition, on September 21, 2009, Patton confirmed the unexhausted nature of many of these claims when he filed a petition for relief under the Pennsylvania Post Conviction Relief Act (PCRA), 42 Pa. C.S.A. §§ 9541 et seq. This PCRA petition for the first time raised with the state courts the double jeopardy and ineffective assistance of counsel issues previously presented in Patton's *pro se* federal habeas petition. (Doc. 13, Ex.1) Thus a comparison of Patton's federal and state petitions reveals that many of Patton's federal claims were not exhausted at the time of the federal filing, and indeed, had not even been presented to the state courts in any form at the time of his June 2009 federal filing.

The Commonwealth has now filed a response to this petition which asserts, in part, that this petition should be dismissed for failure to exhaust state remedies, as required by 28 U.S.C. § 2254. For the reasons set forth below, we recommend that Patton's petition be dismissed for failure to exhaust state remedies.

## II.    **Discussion**

### A. State Prisoner Habeas Relief–The Legal Standard.

A state prisoner seeking to invoke the power of this Court to issue a writ of habeas corpus must satisfy the standards prescribed by 28 U.S.C. § 2254, which provides in part as follows:

> **(a)** The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.
>
> **(b)(1)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that--
>
> **(A)** the applicant has exhausted the remedies available in the courts of the State;
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
> **(2)** An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

28 U.S.C. § 2254 (a) and (b).

### (1.)    Substantive Standards For Habeas Petitions

As this statutory text implies, state prisoners must meet exacting substantive and procedural benchmarks in order to obtain habeas corpus relief. At the outset, a petition must satisfy exacting substantive standards to warrant relief. Federal courts may "entertain an application for a writ of habeas corpus on behalf of a person in custody

pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). By limiting habeas relief to state conduct which violates "the Constitution or laws or treaties of the United States," § 2254 places a high threshold on the courts. Typically, habeas relief will only be granted to state prisoners in those instances where the conduct of state proceedings led to a "fundamental defect which inherently results in a complete miscarriage of justice" or was completely inconsistent with rudimentary demands of fair procedure. See, e.g., Reed v. Farley, 512 U.S. 339, 354 (1994). Thus, claimed violations of state law, standing alone, will not entitle a petitioner to § 2254 relief, absent a showing that those violations are so great as to be of a constitutional dimension. See Priester v. Vaughan, 382 F.3d 394, 401-02 (3d Cir. 2004).

### (2). Procedural Thresholds for Section 2254 Petitions.

### (a). Exhaustion of State Remedies.

Furthermore, state prisoners seeking relief under Section 2254 must also satisfy specific, and precise, procedural standards. Among these procedural prerequisites is a requirement that the petitioner " has exhausted the remedies available in the courts of the State" before seeking relief in federal court. 28 U.S.C. § 2254(b). In instances where a state prisoner has failed to exhaust the legal remedies available to him in the

state courts, federal courts typically will refuse to entertain a petition for habeas corpus. See Whitney v. Horn, 280 F.3d. 240, 250 (3d Cir. 2002).

This statutory exhaustion requirement is rooted in principles of comity and reflects the fundamental idea that the state should be given the initial opportunity to pass upon and correct alleged violations of the petitioner's constitutional rights. O'Sullivan v. Boerckel, 526 U.S. 838, 844 (1999). As the Supreme Court has aptly observed: "a rigorously enforced total exhaustion rule" is necessary in our dual system of government to prevent a federal district court from upsetting a state court decision without first providing the state courts the opportunity to correct a constitutional violation. Rose v. Lundy, 455 U.S. 509, 518 (1982). Requiring exhaustion of claims in state court also promotes the important goal of ensuring that a complete factual record is created to aid the federal courts in their review of a § 2254 petition. Walker v. Vaughn, 53 F.3d 609, 614 (3d Cir. 1995). A petitioner seeking to invoke the writ of habeas corpus, therefore, bears the burden of showing that all of the claims alleged have been "fairly presented" to the state courts, and the claims brought in federal court must be the "substantial equivalent" of those presented to the state courts. Evans v. Court of Common Pleas, 959 F.2d 1227, 1231 (3d Cir. 1992); Santana v. Fenton, 685 F.2d 71, 73-74 (3d Cir. 1982). A petitioner cannot avoid this responsibility merely by suggesting that he is unlikely to succeed in seeking state relief, since it is well-settled

that a claim of "likely futility on the merits does not excuse failure to exhaust a claim in state court." Parker v.Kelchner, 429 F.3d 58, 63 (3d Cir. 2005).

While this exhaustion requirement compels petitioners to have previously given the state courts, a fair "opportunity to apply controlling legal principles to the facts bearing upon [the petitioner's] constitutional claim," Picard v. Connor, 404 U.S. 270, 276 (1971), this requirement is to be applied in a commonsense fashion. Thus, the exhaustion requirement is met when a petitioner submits the gist of his federal complaint to the state courts for consideration, without the necessity that the petitioner engage in some "talismanic" recitation of specific constitutional claims. Evans, 959 F.2d at 1230-33. Similarly, a petitioner meets his obligations by fairly presenting a claim to the state courts, even if the state courts decline to specifically address that claim. See Dye v. Hofbauer, 546 U.S. 1(2005) (per curiam); Johnson v. Pinchak, 392 F.3d 551, 556 (3d Cir. 2004).

Oftentimes, as in this case, these petitions may contain what are referred to as "mixed" claims: petitions with both exhausted and unexhausted claims. In such instances, the court has several courses available to it. First, the court can dismiss the petition without prejudice, so that the petitioner can either return to state court and totally exhaust his claims, or proceed in federal court on a petition which raises only wholly exhausted issues. Rose v. Lundy, 455 U.S. 509 (1982). This total exhaustion

approach facilitates the important goals of federalism and comity that are essential to the exhaustion rule, and allows for complete legal and factual development of these cases in the state legal system before petitions are presented in federal court.

However, because strict compliance with this total exhaustion rule can create procedural dilemmas for some petitioners who may be unable to fully exhaust state remedies on mixed claim petitions before the one-year statute of limitations prescribed for state habeas petitions elapses, the courts have adopted another procedure which may be employed in a limited number of cases, a "stay and abeyance" procedure in which the federal habeas petition is stayed pending exhaustion of state remedies by the petitioner. Rhines v. Weber, 544 U.S. 269 (2005).

Yet, while granting a stay and abeyance is an available procedure, it is not a preferred course of action in these cases. Because a "stay and abeyance" procedure, if used too frequently, can undermine the policies favoring prompt and orderly resolution of state habeas petitions, the Supreme Court has held that:

> [S]tay and abeyance should be available only in limited circumstances. Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court. Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless.

Rhines v. Weber, 544 U.S. at 277. Therefore, in order to qualify for a stay and abeyance a petitioner should "satisf[y] the three requirements for a stay as laid out in Rhines: good cause, potentially meritorious claims, and a lack of intentionally dilatory litigation tactics." Heleva v. Brooks, 581 F.3d 187, 192 (3d. Cir.2009).

**B.** **Patton's Petition Should be Dismissed Since It Contains Unexhausted Claims and Patton is Not Entitled to a Stay**

**1.** **Patton's Habeas Petition Ordinarily Should be Dismissed Since It Contains Numerous Unexhausted Legal Claims Which Have Not Been Addressed by the State Courts**

These settled legal tenets dictate the outcome in this case. At the outset, it is evident that the exhaustion doctrine applies to this case since Patton's habeas petition clearly contains legal claims as to which Patton has not exhausted his state legal remedies. The properly exhausted claims which Patton has completely litigated in the state court system are those set forth in his direct appeal: (1) that the evidence was insufficient to convict him; (2) that the jury's verdict was so against the weight of the evidence as to shock the conscience; (3) that the trial court erred in sustaining Commonwealth objections to certain hearsay evidence; and (4) that the trial court abused its discretion by imposing a 6 ½ to 15 year sentence in this case. (Doc. 6, App. D.)

In contrast, in his federal habeas petition Patton raised six complaints regarding the state court proceedings, four of which have never previously been considered by any state court. These completely unexhausted legal claims, which were advanced in the first instance in this federal habeas petition include the following: (1) Patton's claim that his prosecution following two prior mistrials violated the Double Jeopardy Clause of Fifth Amendment to the United States Constitution (Doc. 1, Ground 1); (2) Patton's assertion that the state courts lacked subject matter jurisdiction because the charges against Patton were not brought by indictment following presentation of the evidence to a grand jury (Doc. 1, Ground 2); (3) Patton's contention that his conviction was the result of ineffective assistance of counsel in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution (Doc. 1, Ground 4); and (4) Patton's allegation that the Commonwealth knowingly relied upon perjured testimony to secure his conviction. (Doc. 1, Ground 6.).[1]

None of these claims were addressed in Patton's direct state appeal of his conviction. Indeed, the unexhausted nature of many of these claims was confirmed on

---

[1] Patton also advanced two other claims in this petition, which liberally construed had been part of his direct appeal from his conviction–an assertion that the evidence was insufficient to convict him, which he casts as a claim of actual innocence, (Doc. 1, Ground 3), and an assertion that restrictions on cross-examination which were the subject of Patton's initial state appeal unfairly curtailed his constitutional right to confront this witness. (Doc. 1, Ground 5).

September 21, 2009, when Patton filed a petition for relief under the Pennsylvania Post Conviction Relief Act (PCRA), 42 Pa. C.S.A. §§ 9541 et seq., which for the first time raised with the state courts the double jeopardy and ineffective assistance of counsel issues previously presented in Patton's *pro se* federal petition. (Doc. 13, Ex.1)

Thus a comparison of Patton's federal habeas petition with his state PCRA petition and the record from Patton's direct appeal of his state conviction reveals beyond any dispute that at least four of Patton's federal claims were not exhausted at the time of the federal filing, and indeed, had not even been presented to the state courts in any form at the time of his June 2009 federal filing. Given this fundamental, and pervasive, failure to exhaust his state remedies, Patton's federal pleading is the very model of an unexhausted petition which the court ordinarily should dismiss without prejudice, so that Patton can either return to state court and totally exhaust his claims, or proceed in federal court on a petition which raises only wholly exhausted issues. Rose v. Lundy, 455 U.S. 509 (1982).

### 2. Patton Is Not Entitled to a Stay of Proceedings in Lieu of Dismissal

Patton can avoid the sanction of dismissal only if he can "satisf[y] the three requirements for a stay as laid out in Rhines: good cause, potentially meritorious claims, and a lack of intentionally dilatory litigation tactics." Heleva v. Brooks, 581

F.3d 187, 192 (3d. Cir.2009). Mindful of the fact that "stay and abeyance should be available only in limited circumstances," <u>Rhines v. Weber,</u> 544 U.S. at 277, we recommend that the Court find that Patton has not meet the exacting standards prescribed by the Supreme Court in <u>Rhines</u> for a stay pending litigation of these unexhausted state claims.

### (a.) <u>Patton Cannot Show Good Cause For Entry of a Stay</u>

At the outset, Patton has not shown "good cause" for the entry of a stay in this case. The stay and abeyance procedure adopted by the Supreme Court in <u>Rhines</u> was intended to avoid unfair prejudice to habeas petitioners in those limited cases where completion of the habeas exhaustion requirement might result in an untimely federal petition under the one-year statute of limitations which applies to state habeas actions under 28 U.S.C. § 2244. Given the concerns which motivate this limited stay and abeyance policy, "good cause" typically requires a showing that requiring exhaustion will result in a prisoner's petition being time-barred under § 2244. <u>See</u> <u>Heleva v. Brooks,</u> 581 F.3d 187, 192 (3d. Cir.2009).

In this case, Patton has made no such showing that the statute of limitations would bar his litigation of these claims once he has properly exhausted his state remedies. Quite the contrary, it appears that Patton can fully comply with this

exhaustion requirement, without running afoul of the statute of limitations, provided he acts diligently in pursuing these claims.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2244 established a one-year statute of limitations on the filing of habeas petitions by state prisoners. In pertinent part, § 2244(d)(1) provides as follows:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of-
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> © the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

See Miller v. New Jersey State Dept. of Corrections 145 F.3d 616, 617 (3d Cir.1998).

The calculation of this limitations period is governed by a series of well-defined rules. At the outset, these rules are prescribed by statute, specifically 28 U.S.C. § 2244(d)(2), which provides that:

> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

See Swartz v. Meyers, 204 F.3d 417, 419 (3d Cir. 2000).

In assessing § 2244(d)(2)'s tolling provision relating to the time when a case is "pending" state review, it is also clear that "the term 'pending' must include the time between a court's ruling and the timely filing of an appeal, [and] 'pending' must include the time during which an appeal could be filed even if the appeal is not eventually filed." Swartz, 204 F.3d at 424. Thus, the courts have construed this tolling provision in a forgiving fashion, one which enables petitioners to toll their filing deadlines for the time periods in which they could have sought further appellate review of their cases, even if they did not, in fact, elect to seek such review. For example, with respect to a petitioner like Patton, who pursued a direct appeal to the state Supreme Court:

> "Section 2244 of AEDPA states that the statute of limitations begins on 'the date on which the judgment [to be reviewed] became final by the conclusion of direct review or the expiration of the time for seeking such

-16-

review.' 28 U.S.C. § 2244(d)(1)(A). Usually that provision is applied to hold that the limitations period runs from the date when a prisoner's time for seeking certiorari from the United States Supreme Court expired. See, e.g., Kapral v. United States, 166 F.3d 565, 575 (3d Cir.1999)."

Heleva, 581 F.3d at 192-193. Therefore, this statutory tolling period embraces the duration of all of Patton's direct state criminal appeals, plus an additional 90 days to allow for a potential petition for writ of certiorari to the United States Supreme Court, a writ that Patton never sought. All of this time would be tolled under § 2244(d)(2) from any statute of limitations calculations. See Swartz, 204 F.3d at 419.

Beyond this tolling period mandated by statute, it has also been held that AEDPA's one-year limitations period is not a jurisdictional bar to the filing of habeas petitions; Miller, 145 F.3d at 617-18, and therefore is subject to equitable tolling. Id. at 618-19. Yet, while equitable tolling is permitted in state habeas petitions under AEDPA, it is not favored. As the United States Court of Appeals for the Third Circuit has observed: "[E]quitable tolling is proper only when the 'principles of equity would make [the] rigid application [of a limitation period] unfair.' Generally, this will occur when the petitioner has 'in some extraordinary way ... been prevented from asserting his or her rights.' The petitioner must show that he or she 'exercised reasonable diligence in investigating and bringing [the] claims.' Mere excusable neglect is not sufficient." Id. at 618-19 (citations omitted). Indeed, it has been held that only:

[T]hree circumstances permit[] equitable tolling: if

(1) the defendant has actively misled the plaintiff,

(2) if the plaintiff has in some extraordinary way been prevented from asserting his rights, or

(3) if the plaintiff has timely asserted his rights mistakenly in the wrong forum.

Fahy v. Horn, 240 F.3d 239, 244 (3d Cir. 2001) citing, Jones v. Morton, 195 F.3d 153, 159 (3d Cir.1999) (citations omitted)..

Applying these principles, it is apparent that Patton cannot cite the impending one-year statute of limitations as "good cause" justifying a stay here. When § 2244's statutory tolling provisions are fully considered, it appears that the time from Patton's conviction and sentence, through to the September 22, 2008 denial of his petition for allowance of appeal by the Pennsylvania Supreme Court would be tolled by the pending states appeals. Patton would then benefit from an additional 90-day tolling period while he considered a potential writ of certiorari, See Swartz, 204 F.3d at 419, which would extend the tolled time period to on or about December 22, 2008. While Patton would not be entitled to toll the time period during which his premature federal habeas petition was pending, the filing of his state PCRA petition on September 21, 2009 would have commenced a further tolling period. Thus, it appears that only approximately 9 months, from December 2008 through September 2009,

have elapsed in this case, a time period which falls well within AEDPA's one-year statute of limitations. Therefore, dismissal of this petition without prejudice to Patton fully exhausting his state remedies will enable the petitioner to completely litigate these claims in state court, while still retaining sufficient time to file a federal habeas petition upon timely completion of this state court litigation. Since Patton can fully exhaust his claims in state court without running afoul of AEDPA's statute of limitations, he has not shown "good cause" justifying a stay and abeyance in this case.

**(b.)** **Patton's Unexhausted Issues Do Not Appear to Contain Potentially Meritorious Claims Warranting a Stay in Lieu of Dismissal.**

In addition to lacking good cause for a stay, Patton cannot qualify for a stay in this case because a threshold analysis of his petition indicates that he cannot meet the other criteria established by the Supreme Court in <u>Rhines</u> for a stay, "potentially meritorious claims, and a lack of intentionally dilatory litigation tactics." <u>Heleva v. Brooks,</u> 581 F.3d 187, 192 (3d. Cir.2009). Indeed, an assessment of the unexhausted claims advanced by Patton in his federal habeas petition strongly suggests that these claims are meritless. For example, in this petition Patton attacks his state conviction, arguing that the state courts lacked subject matter jurisdiction because the charges against Patton were not brought by indictment following presentation of the evidence to a grand jury. (Doc. 1, Ground 2.)

The difficulty with this unexhausted claim is that the premise underlying this argument–an assertion that states are constitutionally mandated to present cases to grand juries–has been flatly rejected by the courts. Thus, it is clear beyond any serious legal dispute that the Fifth Amendment's requirement of indictment by grand jury does not apply to the states, which are free to charge defendants without the necessity of grand jury presentment. See, e.g., Alexander v. Louisiana, 405 U.S. 625, 633 (1972); Hartman v. Lee, 283 F.3d 190, 195 (4th. Cir. 2002); Clanton v. Cooper, 129 F.3d 1147, 1155 (10th. Cir. 1997). Thus, this claim clearly lacks merit.

In his habeas petition Patton also contends that his prosecution following two prior mistrials violated the Double Jeopardy Clause of Fifth Amendment to the United States Constitution.(Doc. 1, Ground 1.) Like his Fifth Amendment grand jury claim, this unexhausted double jeopardy claim is also thoroughly rebuffed by settled case law. Thus, for the past 180 years the United States Supreme Court has recognized that the retrial of a defendant like Patton following the declaration of a mistrial does not offend the constitutional protections against double jeopardy, provided that there was a manifest necessity for the declaration of a mistrial. United States v. Perez, 22 U.S. 579, 580 (1824). In this case, one of Patton's mistrials followed a jury deadlock. In such instances where a jury cannot reach a verdict it is absolutely clear that there is a manifest necessity for a mistrial, and the retrial of the defendant simply does not

implicate the double jeopardy clause of the constitution. <u>See, e.g.</u>, <u>United States v. Perez</u>, <u>supra</u>, (retrial following jury deadlock); <u>United States v. Console</u>, 13 F.3d 641, 663-4 (3d Cir. 1993)(manifest necessity because jury deadlocked). Thus, the initial jury deadlock in Patton's case justified a mistrial declaration, and permitted the retrial of this defendant without offending the Double Jeopardy clause of the Constitution.

In this case, Patton's second trial also ended in a declaration of mistrial after what the state courts described as an inappropriate comment by a Government witness. This declaration of mistrial also does not appear to raise a substantial double jeopardy concern justifying habeas relief. Rather, it is well-established that a mistrial is warranted in situations such as these, where the court finds that prejudicial comments by a government witness may deny a defendant a fair trial. Indeed, in sexual assault cases the United States Court of Appeals for the Third Circuit has long recognized that a mistrial to cure the prejudice of an improper witness remark is driven by manifest necessity and that the subsequent retrial of the defendant does not violate double jeopardy principles. <u>See</u> <u>Gov't of Virgin Islands v. Sciuto</u>, 623 F.2d 869 (3d. Cir. 1980).

The fact that Patton's double jeopardy claims are meritless also undermines the merits of the third unexhausted claim set forth in his habeas petition, Patton's argument that his conviction was the result of ineffective assistance of counsel in

-21-

violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution. (Doc. 1, Ground 4.) In his petition Patton premises this ineffective assistance of counsel claim on his assertion that trial counsel "was ineffective for not raising double jeopardy Bars [sic] to retrial" (Id.)

A defendant like Patton faces an exacting burden when he collaterally challenges a conviction and sentence based upon the alleged ineffectiveness of counsel. As the Supreme Court has noted:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or... sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or... sentence resulted from a breakdown in the adversary process that renders the results unreliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984).

Thus, in order to succeed in a claim of ineffective assistance of counsel, Patton must show both "cause"; that is, a legally deficient performance by counsel, and "prejudice" resulting from that ineffective performance. With respect to the first element of this test, in assessing the competence of counsel, "[j]udicial scrutiny of

counsel's performance must be highly deferential, " <u>Id</u>. at 689, and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." <u>Id</u>. Applying this deferential standard, courts have frequently rejected ineffective assistance of counsel claims like those advanced in this case. Thus, it has been held that the failure to pursue a legally meritless double jeopardy claim does not constitute ineffective assistance of counsel. <u>See</u> <u>United States v. Gonzalez-Arimont</u>, 268 F3d. 8, 13 (1st. Cir. 2001).

This principle is applicable here, and largely undermines Patton's ineffective assistance of counsel claim. It appears that the mistrials that were declared in Patton's state prosecution were the result of a jury deadlock and an improper witness statement. Therefore, these mistrials as a matter of law were compelled by manifest necessity and did not bar Patton's retrial on these charges. <u>See</u> <u>United States v. Console</u>, 13 F.3d 641, 663-64 (3d Cir. 1993); <u>Gov't of Virgin Islands v. Sciuto</u>, 623 F.2d 869 (3d. Cir. 1980). Since settled appellate case law had discounted double jeopardy claims of this type at the time of Patton's conviction, "[t]he attorney's failure to raise the Double Jeopardy question can hardly be considered ineffective assistance in light of the fact that the argument would have been contrary to clear precedent . . . .." <u>United States v. Gonzalez-Arimont</u>, 268 F.3d at 13.

Finally, Patton's unexhausted allegation that the Commonwealth knowingly relied upon perjured testimony to secure his conviction (Doc. 1, Ground 6), does not appear to present a meritorious issue warranting habeas relief, or a stay of these proceedings. This claim is advanced in a conclusory fashion in Patton's petition, with Patton simply claiming that police arrested a witness and then agreed to drop charges if she would testify falsely against him. To sustain this claim as grounds for habeas relief, Patton would have to meet a demanding burden of proof. He would have to show: (1) that a witness committed perjury; (2) that the Commonwealth knew or should have known of the perjury at trial; (3) that the Commonwealth left the perjurious testimony uncorrected; and (4) that the perjured testimony could have affected the outcome of the trial. See Lambert v. Blackwell, 387 F.3d 210, 242 (3d. Cir. 2004).

In this case the alleged perjury proffered by Patton in his habeas petition appears to relate to the testimony of a single witness and to matters that were fully aired in Patton's trial, namely, allegations that this witness was motivated to testify falsely against Patton due to promises of leniency on other charges. (Doc. 6, App. G, pp.56-66.) This issue was addressed at trial by Patton's counsel, and the questions of the witness' possible motives in testifying appear to have been thoroughly litigated before the jury which convicted Patton. (Id.) Therefore, it seems unlikely that Patton

can prevail on this claim in his federal habeas petition, since he cannot readily show

either perjury, or knowing concealment of false testimony by the Commonwealth, at

his trial. See Lambert v. Blackwell, supra, (denying habeas petition premised on

comprehensively litigated claim of perjury that was addressed in the state courts).

In sum, Patton's unexhausted claims appear to have little merit.[2] Therefore, the

preliminary merits analysis called for by the Supreme Court in Rhines as part of any

consideration of a stay also weighs heavily against granting a stay in this case and

---

[2]We note that Patton also advanced two other claims in this petition, which liberally construed had been part of his direct appeal from his conviction and are now procedurally exhausted–an assertion that the evidence was insufficient to convict him, which he casts as a claim of actual innocence, (Doc. 1, Ground 3), and an assertion that restrictions on cross-examination which were the subject of Patton's initial state appeal unfairly curtailed his constitutional right to confront this witness. (Doc. 1, Ground 5) It bears noting that these exhausted claims also have dubious merit. For example, habeas claims, like those advanced by Patton, premised upon alleged unfair restrictions on cross-examination, have been rejected in the past by the courts, which assess these claims under a harmless error standard. See Wright v. Vaughn, 473 F.3d 85 (3d Cir. 2006). Further, as to Patton's actual innocence claim "It has long been recognized that '[c]laims of actual innocence based on newly discovered evidence' are never grounds for 'federal habeas relief absent an independent constitutional violation.' Herrera v. Collins, 506 U.S. 390, 400, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993)." Fielder v. Varner, 379 F.3d 113, 122 (3d. Cir. 2004). Yet, while there is substantial doubt regarding the ultimate merits of these claims, in light of our recommendation that the petition be dismissed on exhaustion grounds we do not reach the ultimate merit of these other, arguably exhausted, claims.

cautions instead in favor of dismissal of Patton's claims without prejudice so that he may properly exhaust these claims in state court. [3]

### III.  **Recommendation**

In short, Patton's petition clearly embraces multiple claims which have not been properly exhausted in the state legal system. Moreover, Patton has not made a showing that would permit the entry of a stay in this case. Therefore, the appropriate course here is dismissal of this petition without prejudice , so that Patton can either return to state court and totally exhaust his claims, or proceed in federal court on a petition which raises only wholly exhausted issues.  Rose v. Lundy, 455 U.S. 509 (1982).

Accordingly, for the foregoing reasons, upon consideration of this Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254, and the  Response in Opposition to this Petition, IT IS RECOMMENDED that the Petition be DISMISSED

---

[3]Finally we note that Patton has not shown the third prerequisite for a stay under Rhines, "a lack of intentionally dilatory litigation tactics." Heleva v. Brooks, 581 F.3d 187, 192 (3d. Cir.2009). Quite the contrary, the procedural history of this case suggests some dilatory conduct on Patton's part. For example, the record reveals that Patton delayed approximately 364 days between the denial of his state appeal by the Pennsylvania Supreme Court on September 22, 2008, and the filing of his state PCRA petition, on September 21, 2009. Given the limitations period imposed under state law for PCRA petitions, this delay of one year, less one day, permits a reasonable inference that Patton was engaging in deliberate deadline brinkmanship in his state proceedings.

WITHOUT PREJUDICE. and that a certificate of appealability should not issue. The Petitioner is further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 21st day of January, 2010.

*S/Martin C. Carlson*
**United States Magistrate Judge**